In the Matter of the Claim of MATTHEW A. MUNIAK, Respondent, against ACF INDUSTRIES, INC., Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, February 5, 1959.

*Kenefick, Letchworth, Baldy, Phillips & Emblidge (Solon J. Stone* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (John J. Reilly* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. On reargument which was allowed on application of the Workmen's Compensation Board, we adhere to the decision previously announced in this case, which reversed the award without prejudice (6 A D 2d 923).

That the work was competent to cause claimant's left inguinal hernia and that it could be found to be an occupational disease were held in the prior decision to be findings of the board warranted by the record. But although a physician discovered the hernia on March 18, 1955 and advised surgical treatment, claimant did not take the medical advice and continued the work he was doing as machine operator grinder and burner without any diminution in wages. The board found disablement as of the date of the medical discovery of the disease and closed the case pending claimant's decision to have an operation. In effect this was an earmarking of the disablement against a future surgical operation when claimant's earnings would be affected during the treatment.

The existence of the hernia, causing neither a cessation of work nor any diminution of wages, was not a "disablement" within the literal language of the statutory definition applicable to claims based on occupational disease (Workmen's Compensation Law, § 37).

For the purposes of dealing with occupational disease claims, subdivision 1 of this section defines disability as the "state of being disabled from earning full wages". The statute treats the "disablement" as thus defined, as "the happening of an accident" for the general applicability of the Workmen's Compensation Law (§ 38) and a series of time limitations hang on the time of occurrence of such disablement (see § 40).

The " date of " disablement shall be such date as the board may find (§ 42), but this section would not authorize the board to find a date for which there was no substantial evidence before it that a " disablement " within the definition of section 37 had actually occurred.

The New York legislative history of this definition is meagre. Section 37 now reads exactly as its predecessor did on original enactment in 1920 by chapter 538 which added to the Workmen's Compensation Law former article 2-A relating to occupational diseases, now article 3.

The occupational disease article was " largely fashioned after the law of Great Britain " (Report, Joint Legis. Committee to Recodify and Revise the Workmen's Compensation Law; N. Y. Legis. Doc., 1922, No. 55, p. 13).

The English statute had provided that compensation was payable for an occupational disease on certification by an officially designated physician that a working man was suffering from one of the enumerated diseases and unable to earn full wages at his work (Workmen's Compensation Act of 1906; 6 Ed. VII, ch. 58; cf. 34 Halsbury's Laws of England [2d ed.], 1940, p. 973).

Thus the New York statute, as well as that of England, made it necessary that an occupational disease actually affect earning capacity in some adverse way before it would be regarded as compensable.

The basic reason for this policy may be that a true " accident " is an occurrence usually having some outward and definitely manifest cause and effect; but a disease may sometimes exist and even continue for a long time without outward manifestation unless the person affected reveals it or acts upon the symptoms he experiences.

For industrial purposes the " disability " is deemed by the literal terms of the statute to exist when there is some resulting adverse change on wage earning. Here is an outward event of which the employer should be required to take note. This does not necessarily mean the employee cannot work at all. It is enough that he is " disabled from earning full wages " at the work at which he was " last employed " (§ 37). This becomes, in effect, a statutory " accident ".

No doubt a person may be " disabled " in a medical sense and still work; but the statute does not seem to embrace this kind of a disablement. It describes one which is made fully dependent upon and related to actual earnings. It would be nothing less than a contradiction in terms to say that a man actually

earning full wages in his job was at the same time in the "state" of being "disabled from earning full wages".

There may possibly be some conflict in decisions of our court under this section; but when the issue was presented squarely, we have tended to follow the statute the way it reads literally (*Matter of Welscher* v. *F. & M. Schaeffer Brewing Co.*, 286 App. Div. 1045; *Matter of Curran* v. *Metropolis Brewing Co.*, 282 App. Div. 1078; cf. *Matter of Cerame* v. *Midland Rochester Co.*, 276 App. Div. 243).

It seems possible to distinguish the cases which may seem to move in a direction suggesting a different reading of the statute. In *Matter of Yuras* v. *Union Table & Spring Co.* (279 App. Div. 679) upon which the board relies, there was a finding that claimant was "partially disabled" on a specific date and that there was at least a minimal resulting loss of time from work. In *Matter of Davis* v. *Dexter Folder Co.* (281 App. Div. 721) there was substantial evidence that disability within the statute existed at the time disablement was found and the question whether there was or was not such evidence seems there to have become the controlling issue.

It is not easy, however, to distinguish some decisions such as *Matter of Cole* v. *Saranac Lake Gen. Hosp.* (282 App. Div. 626) and *Matter of Stephenson* v. *Suffolk Sanatorium* (276 App. Div. 1044). These are tuberculosis cases involving nurses. They held, in effect, that although claimants continued work they did not know they had contracted the disease. Had the claimant in *Matter of Cole* known of her disease "she would have been directed to stop work" (IMRIE, J., p. 629). There is, perhaps, a difference between a claimant who would, had he known his condition, have stopped work, and one who knows it and, postponing surgery to correct it, continues to work at full wages.

A literal reading of the statute was suggested by Judge FOSTER in dissenting in *Matter of Slawinski* v. *Williams & Co.* (273 App. Div. 826); but although the majority decision here, decided without memorandum or opinion, was affirmed (298 N. Y. 546) without opinion, the case involved an impairment of hearing and the reporter's syllabus in the Court of Appeals notes (p. 547) that it was argued by the board that it might allow a schedule award in a case of impaired hearing and that it was not limited by the literal definitions of section 37. The decision, therefore, seems distinguishable. The decision in *Matter of Mastrodonato* v. *Pfaudler Co.* (307 N. Y. 592) did not reach the point we deal with here; the court there dealt with an accident.

As a result of the decisional gloss that has been added by judicial construction to the language of section 37, there may be areas where the state of being disabled from earning full wages may be deemed to exist where medical advice would be given and acted upon which would in fact impair that ability and affect the wages; but that is not the case before us. Here the medical disability exists; it will become a "disablement" under section 37 when surgery is undertaken; but the surgery is presently refused and the wage earning of the employee continues unimpaired. Interpretation of the statute against its literal terms ought not be pushed far enough to embrace such a case as this.

The determination and award should be reversed, without prejudice to further consideration if the claim of disablement is established, with costs to appellant against the Workmen's Compensation Board.

FOSTER, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Determination and award reversed, without prejudice to further consideration if the claim of disablement is established, with costs to appellant against the Workmen's Compensation Board.