■ In the Matter of the Claim of ALVIN G. RUSSELL, Respondent, v. UNION FORGING COMPANY et al., Appellants, et al., Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeals by an employer and its insurance carrier from decisions of the Workmen's Compensation Board which established liability for occupational loss of hearing and made a schedule award therefor. Specifically, the board found 52.5% binaural loss of hearing, incurred by claimant as the result of 22 years' exposure to noise in the course of his employment as a hammerman by appellant Union Forging Company. None of these findings are contested. The board fixed the date of disablement as in April, 1964, being six months after claimant's separation from employment with appellant Union in October of 1963; this in purported compliance with section 49-bb of the Workmen's Compensation Law, in pertinent part providing: "Notwithstanding any other inconsistent provisions of this chapter compensation for occupational loss of hearing shall become due and payable six months after separation from work for the last employer in whose employment the employee was at any time during such employment exposed to harmful noise, and the last day of such period of separation from work shall be the date of disablement." Before the expiration of the six months' period following his separation from Union, claimant entered the employ in New Jersey of Garden State Forge Company, with whom his employment continued at least until the time of the schedule award, and in which employment his exposure to harmful noise continued. Appellants' sole contention, in resisting the. award, is that inasmuch as claimant had not removed himself from employment exposing him to harmful noise, he is not at this time entitled to the schedule award and will not be entitled to any award until he shall have been free from such exposure for the six months' period provided by section 49-bb, above quoted. The basis of the board's decision is that the section 49-bb clause, "the last employer in whose employment the employee was * * * exposed to harmful noise", refers to the last New York employer or employer subject to the jurisdiction of the New York Workmen's Compensation Board. (See *Matter of Ciavarro* v. *Despatch Shops*, 22 A D 2d 312, mot. for lv. to app. den. 15 N Y 2d 486; *Matter of Hamilton* v. *Healy Co.*, 14 A D 2d 364.) These authorities, and the principles underlying them, seem to us to require affirmance of the award. Otherwise, in all probability, if not, indeed, in certainty, claimant will remain uncompensated, now and in future, for the serious condition caused by 22 years' service in a harmful employment. The result would be to thwart the beneficial intent of the Workmen's Compensation Law and, in particular, the "grave concern" of the Legislature, manifest in article 3-A of the act, for workmen incurring occupational deafness. It is true, of course, that the purpose of the six months' delay prescribed by section 49-bb was to enable medical evaluation of the extent of the hearing loss to be made with a greater degree of accuracy. Even before the enactment of section 49-bb (L. 1958, ch. 974, eff. July 1, 1958) this medical principle was generally recognized and given effect

(see, e.g., *Matter of Grano* v. *Despatch Shops,* 7 A D 2d 6, 10; *Matter of Lumsden* v. *Despatch Shops,* 5 A D 2d 242); and thus the knowing departure from it in *Ciavarro* (*supra*) was not, as the present dissents suggest, predicated solely or basically on the conclusion that section 49-bb was not retroactive, so as to render retroactivity the basic issue upon the appeal. In fact, the question of retroactivity had previously been determined (*Matter of McGoldrick* v. *New York Post,* 20 A D 2d 595), as *Ciavarro* noted (p. 314) and as, indeed, the present dissents recognize, and hence was not required to be decided anew. Further, the pertinent words in section 49-bb — "the last employer in whose employment the employee was * * * exposed to harmful noise", which are, incidentally, critical to issues other than this — were not new; but in the 1958 amendment were adapted from the then and present section 44 (as amd. L. 1947, ch. 431, § 9) governing liability for occupational diseases generally and referring to "the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted". Thus, neither *Ciavarro* (*supra*), nor *Hamilton* (14 A D 2d 364, *supra*), which preceded it, turned on questions of procedure and retroactivity but, rather, on the substantial issue of the legal construction of the term "last employer". So, in *Ciavarro* (*supra*, p. 315), as the appellants themselves recognized, it was made clear "that the rule enunciated in *Matter of Hamilton* v. *Healy Co.* (14 A D 2d 364) [*supra*] require[d] the holding * * * that the last employer subject to its jurisdiction from whom compensation was recoverable was Despatch Shops, Inc." And here, as in *Ciavarro* (*supra*, pp. 315–316), "the holding contended for by appellants would deprive claimants of any remedy, a result which we think the Legislature did not contemplate. (*Matter of Slawinski* v. *Williams & Co.,* 298 N. Y. 546, mot. for rearg. den. 298 N. Y. 634.)" In sum, we find *Ciavarro* and *Hamilton* in point and controlling, there being no distinction between the interstate rail carrier which was, in terms of chronology, the last employer in *Ciavarro* and the New Jersey employer here, neither being subject to the New York Workmen's Compensation Law or within the jurisdiction of the New York Workmen's Compensation Board. There is no claim that the six months' period away from harmful noise is indispensable to a proper diagnosis. Such a contention was squarely presented and rejected in *Ciavarro* (*supra*). The statute itself, for example, authorizes a posthumous award if death occurs before the employee shall have been removed from exposure to harmful noise for the six months' period. (Workmen's Compensation Law, § 49-dd.) In this case, medical experts testified to a permanent binaural loss of hearing ranging from 49% to 73%; appellants' expert testified to a hearing loss of 49.5%; and appellants interpose no factual contradiction and do not dispute on factual grounds the board's finding of 52.5%. Each minority memorandum is based on the idea that the Legislature made it imperative that medical evaluation of the hearing loss be postponed six months, and, of course, this is true in most instances. However, where, as here, and as in *Ciavarro* (*supra*), such evaluation is impossible because of continuing noisy employment beyond the board's jurisdiction, and where, as here, there can never be a more accurate medical evaluation concerning this employment than that now before us, we can see no point in merely postponing payment, which is all the minority would have us do; but, parenthetically, with no indication of how this procedural step may be accomplished under the statute. It seems to us that the conclusion at which the minority arrives thus undermines its own basic rationale. Since actual payment is, in sum, all that the minority would, or could, postpone, we would observe that the payment of a schedule award for organic damage, prior to actual loss of earnings, is not in the least unusual. Under the system of liability and apportionment, as well as the time limitations, imposed by

article 3-A (see § 49-ee in particular), a holding that payment must be postponed is not only hypertechnical, but would apparently deprive claimant of any compensation, now and in future, leaving him uncompensated for a serious condition admittedly due to 22 years' harmful exposure in a New York employment; a result as manifestly unfair as unintended under the statute. Decisions affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Reynolds and Aulisi, JJ., concur in memorandum by Gibson, P. J. Herlihy and Gabrielli, JJ., dissent and vote to reverse in separate memorandums. Herlihy, J. (dissenting). In 1958 the Legislature added article 3-A to the Workmen's Compensation Law, noting that loss of hearing from exposure to industrial noise had created a problem of grave concern and that the *public interest* could be best served by providing that compensation for occupational loss of hearing *shall be paid only* as provided therein. The pertinent sections of article 3-A here involved are as follows: Section 49-bb as applicable provides: "Notwithstanding any other inconsistent provisions of this chapter compensation * * * shall become *due and payable* six months after separation from work for the *last employer* in whose employment the employee was at any time during such employment exposed to *harmful noise,* and the last day of such period of separation from work shall be the *date of disablement.*" (Emphasis added.) Subdivision 3 of section 49-ee, thereof, as applicable reads: "*All issues* as to the nature and extent of the employee's *ultimate loss* of hearing due to his occupation, the total *amount* of compensation * * * due the employee * * * the *liability,* if any, of the *last employer* and the amount of compensation, if any, to be paid by such *last employer,* shall be determined *only after* the employee shall have been removed from harmful exposure for a period of at *least* six consecutive months * * * and *after* his disablement as set forth in section forty-nine-bb of this article." (Emphasis added.) The reliance of the majority on *Matter of Ciavarro* v. *Despatch Shops* (22 A D 2d 312, mot. for lv. to app. den. 15 N Y 2d 486) is, to my way of thinking, misplaced. In that case the board found in 1962 that occupational disability occurred in 1955 (prior to the enactment of art. 3-A) and found that apportionment was not required. The employer then sought refuge under the new article, more specifically section 49-bb, which required the six months' waiting period. The court stated that the section was not applicable and that is the only issue decided as to article 3-A. The rights of the claimant are fully protected. His claim is filed, the date of disability is not questioned on this appeal and the Union Forging Company on the present record is his last New York employer. It is his option as to whether he wishes to comply with the six months' waiting period in order to be entitled to benefits, at the termination of which the board by the application of the proper formula might find that his loss of hearing is not 52% but possibly much less or nil. If the majority interpretation is accepted, a claimant could evade the intent and purpose of article 3-A by moving out of New York, establishing his claim under the New York law and receiving a schedule award and he could thereafter immediately return to New York employment, thereby evading the statutory waiting period. The Legislature certainly did not intend that a claimant moving out of New York State could or should receive benefits to which a New York resident would not be entitled. It appears to me that the Legislature made it manifestly clear what was intended by the new article and, as ofttimes happens, if some contingency has developed which was not anticipated, the correction thereof is by way of an act of the Legislature and not by judicial fiat. The Referee in his decision (Jan. 28, 1965) was entirely correct when he decided: "This case is closed until such time as claimant separates himself

from noise for a period of six months." There is no logical reason or justification for aborting the intent and purpose of article 3-A as suggested by the majority herein. The decisions of the Workmen's Compensation Board should be reversed, and the matter remitted for determination not inconsistent with this memorandum. Gabrielli, J. (dissenting). I cannot agree with the majority that the claimant is presently entitled to a schedule award for binaural loss of hearing. Claimant was employed as a "Hammerman" for 22 years in a drop forging plant, employment which concededly exposed him to harmful noises. He terminated his employment with this New York employer in October, 1963 and during the same month obtained similar employment with another forging company in New Jersey, where he was exposed to the same kind of noise as in his previous work. Claimant executed a waiver to the New Jersey employer for any loss of hearing sustained by reason of his former employment in New York. Claimant continued to work and filed a claim for benefits against his former employer. The board has, at this time, erroneously made a schedule award against the former employer, despite the fact that he continued in the same type of noise-producing work, the date of disablement being established as of April, 1964, six months after separation from his prior employment. We have no quarrel with respondent's contention that the "last employer" as used in article 3-A refers to the last New York employer as defined by this court in *Matter of Hamilton* v. *Healy Co.* (14 A D 2d 364) in interpreting a section not here involved (Workmen's Compensation Law, § 44), but we cannot agree that the claimant is entitled to a monetary award *at this time,* despite the fact that the board properly found (Workmen's Compensation Law, § 42) his *date* of disablement to be in April, 1964. It is urged, however, that regardless of claimant's conceded continuance in employment which exposes him to the same type of harmful noise as before, he is entitled to a schedule award because we have no jurisdiction over the present out-of-State employer. With this, we cannot agree. The Legislature, recognizing the need to properly compensate employees for loss of hearing resulting from exposure to industrial noise, declared "that compensation for occupational loss of hearing shall be paid *only* as provided in this article and subject to the conditions and limitations hereinafter set forth". (Workmen's Compensation Law, § 49-aa; emphasis supplied.) The next section (§ 49-bb) of article 3-A provides that: "Notwithstanding any other inconsistent provisions of this chapter compensation for occupational loss of hearing shall become due and payable six months after separation from work for the last employer in whose employment the employee was at any time during such employment exposed to harmful noise, and the last day of such period of separation from work shall be the date of disablement. Such disablement shall be treated as the happening of an accident within the meaning of this chapter and the procedure and practice provided in the chapter shall apply to all proceedings as set forth in this article except where specifically otherwise provided herein. The former average wage on which the compensation rate payable shall be based shall be determined, as provided in sections fourteen and fourteen-a of this chapter, by the wages earned by the employee during the year prior to the employee's last day of work in the last employment in which he was exposed to harmful noise." The statute (Workmen's Compensation Law, § 49-bb) specifically provides for a six months' "waiting period" or separation from any harmful noise employment, at the end of which time an accurate diagnosis can be made. We believe this separation time from harmful noises was imposed by the Legislature as a medical limitation for the purpose of making an accurate determination of the per-

centage loss of conversational hearing, which the drafters obviously felt could not be determined so long as the claimant continues in the same or similar employment. In interpreting the section in question (Workmen's Compensation Law, art. 3-A, § 49-bb) we stated in *Matter of McGoldrick* v. *New York Post* (20 A D 2d 595): "Finally the purpose and effect of the amendment were not to accomplish a procedural change as such but quite evidently to provide a period of time away from the noisy environment so as to permit accurate appraisal of the supposed hearing loss. (See 1953 Report of Committee of Consultants on Occupational Loss of Hearing, 12 NYCRR 350.1, pp. 1081–1082.)" We are additionally compelled to take this position because of the provisions of section 49-ee (subd. 3) of the Workmen's Compensation Law, which also clearly indicates the legislative intent, wherein it is provided in pertinent part that: "3. All issues as to the nature and extent of the employee's ultimate loss of hearing due to his occupation, the total amount of compensation, if any, due the employee, the liability for contribution, if any, of the prior employer or employers who were given notice by the last employer as hereinbefore provided, the amount of the contribution, if any, to be paid by such prior employer or employers, and the liability, if any, of the last employer and the amount of compensation, if any, to be paid by such last employer, *shall be determined only after the employee shall have been removed from harmful exposure* for a period of at least six consecutive months, whether working for one or more employers, and after his disablement as set forth in section forty-nine-bb of this article." (Emphasis supplied.) It is noteworthy that one of the conditions predicated herein is not that the employee be separated from work for the last employer over which our compensation law has jurisdiction, but that, as this section provides, "the nature and extent of the employee's *ultimate loss* of hearing due to his occupation, the total amount of compensation, if any, due the employee * * * and the liability, if any, of the last employer and the amount of compensation, if any, to be paid by such last employer, shall be determined *only* after the employee shall have been removed from harmful exposure for a period of at least six consecutive months". Reliance on *Matter of Ciavarro* v. *Despatch Shops* (22 A D 2d 312) is misplaced for there we were concerned with the meaning and effect of section 44 of the Workmen's Compensation Law and the basic issue was the retroactivity of section 49-bb and wherein we held that the latter section did not apply to claims originating prior to its enactment. The date of disablement has been properly fixed and the employee's claim for compensation was timely filed (*Matter of Davis* v. *Dexter Folder Co.*, 281 App. Div. 721) but must, under the circumstances here presented, await compliance with the six months' limitation before a schedule monetary award can be made. The decisions should be reversed insofar as a schedule award is made, with costs to appellants against the Workmen's Compensation Board, and the matter remitted for further proceedings not inconsistent herewith.